HOLLAND & KNIGHT LLP
Shelley G. Hurwitz (State Bar #217566)
400 S. Hope St., 8th Floor
Los Angeles, California  90071-2040
Telephone (213) 896-2400
Facsimile (213) 896-2450

Attorneys for Defendant, Cross-Complainant,
and Cross-Defendant Victor Technologies
International, Inc., erroneously sued herein as Victor
Technologies International, Inc.; Turbotorch

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MITCHELL WALTER,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN INDUSTRIES, INC., VICTOR TECHNOLOGIES INTERNATIONAL, INC., TURBOTORCH; GOSS, INC. and DOES 1 through 100, Inclusive,<br><br>Defendants. | CASE NO. SACV 13-1503 JLS (ANx)<br><br>**DECLARATION OF SHELLEY HURWITZ IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Date: March 20, 2015<br>Time: 2:30 pm<br>Courtroom 10a<br><br>Trial Date:          May 12, 2015 |

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

### DECLARATION OF SHELLEY HURWITZ

1. I, Shelley Hurwitz, am a partner at Holland & Knight, counsel of record for defendant and cross-defendant Victor Technologies International, Inc. ("Victor"). I have personal knowledge of the matters stated herein, except for those matters stated on information and belief, and I could truthfully testify thereto.

2. Plaintiff Mitchell Walter ("Plaintiff") is represented in this matter by Kevin Liebeck.

3. All parties participated in mediation on September 30, 2014. No parties settled during the mediation.

4. In late December 2014, Mr. Liebeck and I began negotiating a settlement of Plaintiff's claims against Victor. We exchanged several offers and demands by telephone. On or about December 29, 2014, I called Mr. Liebeck and made a settlement offer from Victor to Plaintiff of a payment of $27,500 in exchange for the dismissal of Plaintiff's claims against Victor. Mr. Liebeck confirmed that he would speak to his client about this offer, and that he would get back to me. I also advised Mr. Liebeck during that call that Victor would be moving for a good faith settlement determination once he accepted Victor's settlement offer.

5. Mr. Liebeck then emailed me on December 30, 2014 and accepted, in writing, and on his client's behalf, Victor's offer to settle this action for $27,500. Attached hereto as Exhibit 1is a true and correct copy of an email that I received from Mr. Liebeck on December 30, 2014 at 6:30 PM. The text of the email reads: "Shelly, Plaintiff will settle at $27,500 as to Victor ONLY. Best, Kevin."

6. I communicated plaintiff's acceptance of Victor's settlement offer to my client Victor at that time. My client relied on Mr. Liebeck's explicit and unambiguous written acceptance of Victor's settlement offer and accordingly considered this case to be settled pursuant to that agreement.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

7.  I responded to Mr. Liebeck on December 30, 2015 via an email (a true and correct copy of which is attached hereto as Exhibit 2), that further confirmed our agreement to settle this action: "Great. I will send you a settlement agreement."

8.  On January 2, 2015, I spoke to Mr. Liebeck by telephone.  I advised Mr. Liebeck that I would be contacting counsel for defendant Goss, Inc. ("Goss") and defendant Western Industries, Inc. ("Western") in order to hold a local meeting of counsel prior to the filing of Victor's good faith motion.

9.  On January 2, 2015, in reliance on the settlement agreement reached with plaintiff, I sent an email to counsel for Goss and Western, a true and correct copy of which is attached hereto as Exhibit 3, stating the following:  "I left you both voicemails. Victor has settled with plaintiff for $27,500. We would like to get a good faith determination. I would appreciate it if you would sign the attached stipulation. If you cannot get authority to sign the stipulation, please let me know when you are available for a Rule 7 Local Meeting of Counsel on Victor's Motion for a Good Faith Determination and to Dismiss Cross-Complaint."  Goss' counsel subsequently advised me that Goss would stipulate to the good faith of Victor's settlement with Plaintiff.  I prepared a motion for a good faith settlement determination.

10.  In reliance on the settlement agreement with plaintiff, Victor and Goss exchanged emails and agreed to settle the cross claims between them and a Stipulation for Dismissal.  A true and correct copy of the emails exchanged between myself and Goss's counsel agreeing to settle the cross-claims is attached as Exhibit 4 hereto.  A Stipulation of Dismissal of those cross-claims was filed with this court on January 7, 2015 and served on Plaintiff on January 7, 2015.

11.  Consistent with our agreement to settle this action, on January 2, 2015, I sent an email to Mr. Liebeck, (a true and correct copy of which is attached hereto as Exhibit 5), which attached a formal settlement agreement and proposed Stipulation for Good Faith Settlement.  The text of the email stated: "Kevin, I have attached a draft settlement agreement for your review and your client's execution.  I have also

attached a stipulation for good faith and dismissal of the cross-claims between Victor and Goss.  My plan is to file the stipulation with a motion for good faith determination. My hope is that all parties agree to the stipulation and that the stipulation gets entered quickly.  Then I will take the motion off-calendar.  Please let me know if you have comments on the stipulation – if not, please sign and return to me.  I'd like to get the stipulation circulated ASAP. Thanks Shelley".

12.   Finally, in further reliance on the settlement agreement between Victor and plaintiff, I sent an email, (a true and correct copy of which is attached hereto as Exhibit 6) to Victor's retained expert Scott Schroeder on January 2, 2015 in which I advised Mr. Schroeder that: "We have settled the Walter matter.  Please do not perform any further work."

13.   On January 7, 2015, Mr. Liebeck telephoned me and advised me that he intended to renege on the parties' explicit agreement to settle this matter. Specifically, he said that Plaintiff would no longer dismiss his claims in exchange for a payment of $27,500 because he believed Western's expert report contained a theory of liability against Victor.  He did not specify what that theory was, nor did he reference any theory that plaintiff had against Victor.

14. Western served its expert report on January 5, 2015. I reviewed Plaintiff's expert report and Western's expert report.  Western's expert report was not directed towards Victor and contains no design or manufacturing defect theory of liability against the hand-held torch manufactured by Victor. Western's expert report points out that damage to the torch which appeared to have been caused by plaintiff's misuse of it might have contributed to a gas leak (a theory that is directed towards plaintiff). The Western Industries' expert report does not assert that the Victor torch contained a design or manufacturing defect or that it was otherwise inherently defective.  Indeed, plaintiff's own expert report also concluded that the Victor torch performed properly: ". . . the Victor Turbotorch did not fail in the incident that caused

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

4

injuries to Mr. Walter." A true and correct copy of Plaintiff's experts' report is attached hereto as Exhibit 7.

15. Attached as Exhibit 8 is a true and correct copy of pertinent excerpts from plaintiff Mitchell Walter's deposition in this matter.

16. Attached hereto as Exhibit 9 is a true and correct copy of Plaintiff's Supplemental Initial Disclosures.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 21st day of January 2015 at Los Angeles, California.

_____
/s/       Shelley Hurwitz
          Shelley Hurwitz

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

5

# EXHIBIT 1

| | |
|---|---|
| **From:** | Kevin Liebeck |
| **To:** | Hurwitz, Shelley G (LAX-X52476) |
| **Cc:** | Jason Caruso; Valerie Kesler |
| **Subject:** | Walter |
| **Date:** | Tuesday, December 30, 2014 6:03:51 PM |

Shelly,

Plaintiff will settle at $27,500 as to Victor ONLY.

Best,

Kevin


**KEVIN G. LIEBECK**

ATTORNEY AT LAW

HODES • MILMAN • LIEBECK, LLP

9210 IRVINE CENTER DRIVE

IRVINE, CALIFORNIA, 92618

TEL:    (949) 640-8222

FAX:    (949) 336-8114

EMAIL: KLIEBECK@HMLM.COM

WEB:    WWW.HMLM.COM


OFFICES IN CALIFORNIA & ARIZONA


**CONFIDENTIALITY NOTICE:** This transmittal is a confidential attorney client communication or may otherwise be privileged or confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error and that any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you have received this communication in error, please notify this office immediately by reply or by telephone at (949) 640-8222 and immediately delete this message and all of its attachments, if any.


**IRS CIRCULAR 230 NOTICE:** Pursuant to IRS Circular 230, any tax advice in this email may not be used to avoid tax penalties or to promote, market or recommend any matter herein.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Hurwitz, Shelley G (LAX-X52476) |
| **To:** | "Kevin Liebeck" |
| **Cc:** | Jason Caruso; Valerie Kesler |
| **Subject:** | RE: Walter |
| **Date:** | Tuesday, December 30, 2014 6:30:37 PM |

Great.  I will send you a settlement agreement.  Given that there is still a cross-claim pending from Goss, and the holiday and due date, I will still be filing the motion for summary judgment tomorrow.

**Shelley Hurwitz | Holland & Knight**

Partner

400 South Hope Street, 8th Floor | Los Angeles CA 90071

Phone 213.896.2476 | Fax 213.896.2450

shelley.hurwitz@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Kevin Liebeck [mailto:kliebeck@hmlm.com]
**Sent:** Tuesday, December 30, 2014 6:03 PM
**To:** Hurwitz, Shelley G (LAX-X52476)
**Cc:** Jason Caruso; Valerie Kesler
**Subject:** Walter

Shelly,

Plaintiff will settle at $27,500 as to Victor ONLY.

Best,

Kevin

**KEVIN G. LIEBECK**

ATTORNEY AT LAW

HODES • MILMAN • LIEBECK, LLP

9210 IRVINE CENTER DRIVE

IRVINE, CALIFORNIA, 92618

TEL:    (949) 640-8222

FAX:    (949) 336-8114

EMAIL: KLIEBECK@HMLM.COM

WEB:    WWW.HMLM.COM

# EXHIBIT 3

| | |
|---|---|
| **From:** | Hurwitz, Shelley G (LAX-X52476) |
| **To:** | Scott,Richard L; Allegra C. Perez |
| **Bcc:** | Thomas Richards; Joseph G. Colao |
| **Subject:** | Walter |
| **Date:** | Friday, January 02, 2015 11:03:04 AM |
| **Attachments:** | Stipulation for Good Faith Settlement.DOCX |
| | Order on Stipulation for Good Faith Settlement.DOCX |

Richard and Allegra,

I left you both voicemails.  Victor has settled with plaintiff for $27,500.  We would like to get a good faith determination.  I would appreciate it if you would sign the attached stipulation.  If you cannot get authority to sign the stipulation, please let me know when you are available for a Rule 7 Local Meeting of Counsel on Victor's Motion for a Good Faith Determination and to Dismiss Cross-Complaint.

Thanks

Shelley

**Shelley Hurwitz | Holland & Knight**

Partner

400 South Hope Street, 8th Floor | Los Angeles CA 90071

Phone 213.896.2476 | Fax 213.896.2450

shelley.hurwitz@hklaw.com | www.hklaw.com

Add to address book | View professional biography

# EXHIBIT 4

| From: | Scott,Richard L |
|---|---|
| To: | Hurwitz, Shelley G (LAX-X52476) |
| Cc: | Scott,Richard L; Summers,Tammi G |
| Subject: | RE: Mitchell Walter v. Western Industries, Inc. - Our File No. 18050 |
| Date: | Tuesday, January 06, 2015 11:31:23 AM |

Send me dismissal, good faith stip and confirm cost and fee waiver and I will sign. Rich.

**Richard L. Scott**
Attorney at Law
DIEDERICH & ASSOCIATES
1980 ORANGE TREE LANE, SUITE 106
REDLANDS, CALIFORNIA 92374
_____
DIRECT DIAL (909) 793-9015
OFFICE MAIN (909) 793-9002
FACSIMILE   (909) 798-7896
MOBILE:     (951) 314-3479
rlscott@travelers.com

Not a Partnership or Professional Corporation
All attorneys are Employees of The Travelers Indemnity Company and its Property Casualty Affiliates

**From:** Shelley.Hurwitz@hklaw.com [mailto:Shelley.Hurwitz@hklaw.com]
**Sent:** Tuesday, January 06, 2015 11:07 AM
**To:** Scott,Richard L
**Cc:** Cody,TJ; Summers,Tammi G; CTGoss@GossOnline.com
**Subject:** RE: Mitchell Walter v. Western Industries, Inc. - Our File No. 18050

Thanks – sounds good.  Will you sign our good faith stip?

**Shelley Hurwitz | Holland & Knight**

Partner

400 South Hope Street, 8th Floor | Los Angeles CA 90071

Phone 213.896.2476 | Fax 213.896.2450

shelley.hurwitz@hklaw.com | www.hklaw.com

Add to address book | View professional biography

> **From:** Scott,Richard L [mailto:RLSCOTT@travelers.com]
> **Sent:** Tuesday, January 06, 2015 10:39 AM
> **To:** Hurwitz, Shelley G (LAX-X52476)
> **Cc:** Cody,TJ; Scott,Richard L; Summers,Tammi G; Charles Goss (CTGoss@GossOnline.com)
> **Subject:** RE: Mitchell Walter v. Western Industries, Inc. - Our File No. 18050
>
> I have been authorized to dismiss our cross-complaint for a waiver of costs. Let me know. Rich.
>
> **Richard L. Scott**
> Attorney at Law
> DIEDERICH & ASSOCIATES
> 1980 ORANGE TREE LANE, SUITE 106
> REDLANDS, CALIFORNIA 92374
> _____

```
DIRECT DIAL (909) 793-9015
OFFICE MAIN (909) 793-9002
FACSIMILE  (909) 798-7896
MOBILE:    (951) 314-3479
rlscott@travelers.com
```

Not a Partnership or Professional Corporation
All attorneys are Employees of The Travelers Indemnity Company and its Property Casualty Affiliates

**From:** Shelley.Hurwitz@hklaw.com [mailto:Shelley.Hurwitz@hklaw.com]
**Sent:** Monday, January 05, 2015 6:24 PM
**To:** hernandezr@slmclaw.com; jcaruso@HMLM.com; Scott,Richard L
**Cc:** papek@slmclaw.com; frishmand@slmclaw.com; pereza@slmclaw.com;
carltona@slmclaw.com
**Subject:** RE: Mitchell Walter v. Western Industries, Inc. - Our File No. 18050

As previously mentioned, Victor has settled with plaintiff.  Please let me know if you will
stipulate to the good faith order.  I've attached Victor's expert report that was previously
served.

**Shelley Hurwitz | Holland & Knight**
Partner
400 South Hope Street, 8th Floor | Los Angeles CA 90071
Phone 213.896.2476 | Fax 213.896.2450
shelley.hurwitz@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Rachel Hernandez [mailto:hernandezr@slmclaw.com]
**Sent:** Monday, January 05, 2015 6:19 PM
**To:** 'jcaruso@HMLM.com'; Hurwitz, Shelley G (LAX-X52476); 'rlscott@travelers.com'
**Cc:** Kara A. Pape; David Frishman; Allegra C. Perez; Amber Carlton
**Subject:** Mitchell Walter v. Western Industries, Inc. - Our File No. 18050

Dear Counsel:

Attach please find defendant Western Industries, Inc.'s Initial Disclosure of Expert
and Expert Report.

If you have any questions, please feel free to contact me.

Thank you.

Rachel Hernandez, Assistant to Allegra C. Perez

Rachel Hernandez
Legal Secretary to John H. Horwitz, Esq.,
Richard P. Dieffenbach, Esq.,
and Allegra C. Perez, Esq.
Schaffer, Lax, McNaughton & Chen
515 South Figueroa St. Suite 1400
Los Angeles, CA 90071
Phone: 1.213.337.1000 ex. 2206
Fax: 1.213.337.1010
hernandezr@slmclaw.com
http://www.slmclaw.com

# EXHIBIT 5

| | |
|---|---|
| **From:** | Hurwitz, Shelley G (LAX-X52476) |
| **To:** | Kevin Liebeck |
| **Cc:** | Jason Caruso |
| **Bcc:** | Thomas Richards; Joseph G. Colao |
| **Subject:** | Walter -- Settlement with victor |
| **Date:** | Friday, January 02, 2015 10:21:41 AM |
| **Attachments:** | Settlement Agreement Walter.DOCX |
| | Stipulation for Good Faith Settlement.DOCX |

Kevin,

I have attached a draft settlement agreement for your review and your client's execution.  I have also attached a stipulation for  good faith and dismissal of the cross-claims between Victor and Goss.  My plan is to file the stipulation with a motion for good faith determination. My hope is that all parties agree to the stipulation and that the stipulation gets entered quickly.  Then I will take the motion off-calendar.  Please let me know if you have comments on the stipulation – if not, please sign and return to me.  I'd like to get the stipulation circulated ASAP.

Thanks

Shelley

**Shelley Hurwitz** | **Holland & Knight**

Partner

400 South Hope Street, 8th Floor | Los Angeles CA 90071

Phone 213.896.2476 | Fax 213.896.2450

shelley.hurwitz@hklaw.com | www.hklaw.com

Add to address book | View professional biography

# EXHIBIT 6

| **From:** | Hurwitz, Shelley G (LAX-X52476) |
| **To:** | Scott Schroeder |
| **Cc:** | Thomas Richards; Joseph G. Colao |
| **Subject:** | Walter |
| **Date:** | Friday, January 02, 2015 10:48:08 AM |

Scott,

We have settled the Walter matter.  Please do not perform any further work.  Thank you for your help and I look forward to working with you again.

Shelley

**Shelley Hurwitz | Holland & Knight**

Partner

400 South Hope Street, 8th Floor | Los Angeles CA 90071

Phone 213.896.2476 | Fax 213.896.2450

shelley.hurwitz@hklaw.com | www.hklaw.com

Add to address book | View professional biography

# EXHIBIT 7

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL



**KARS'**

## Advanced Materials, Inc.
## Testing & Research Labs

September 29, 2014


Mr. Kevin G. Liebeck, Esq.
Hodes Milman Liebeck LLP
9210 Irvine Center Dr
Irvine, CA 92618


Re:   Mitchell Walter v. Western Industries et al

       US District Court Case 8:13-cv-01503-JLS-AN

Dear Mr. Liebeck:

1.  I, Dr. Ramesh J. Kar, am a Professional Metallurgical Engineer with 35 years
    experience in the fields of mechanical metallurgy, materials science, and forensic
    failure analysis.  I am President of Kars' Advanced Materials, Inc., Testing &
    Research Labs (also referred to as Kars' Labs) located in Anaheim, California.


2.  My education qualifications are as follows.  I hold a Bachelor's degree in
    Metallurgical Engineering from the Indian Institute of Technology; India; and Masters
    and Doctoral degrees in Materials Science and Engineering, with a minor in
    Mechanical Engineering, from the University of California, Berkeley.  I am a
    Registered Professional Metallurgical Engineer in the State of California.  I am an
    elected Fellow of ASM International (formerly the American Society of Metals) since
    1989.  I am also a Board Certified Diplomate by the American Board of Forensics
    Examiner and an elected Fellow of the American College of Forensic Examiners.

● 2528 W. Woodland Dr. ●  Anaheim, CA 92801
● TEL (714) 527-7100 ●  FAX (714) 527-7169

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL

3.  I have been conducting product liability and forensic failure analysis investigations since 1979 on failed consumer and automotive products, industrial hardware, medical devices, accidents/failures, and aerospace components.  These investigations have included metallurgical evaluations and failure analyses on steel and aluminum cylinders used for storage of liquid and gaseous nitrogen, oxygen, propane, and MAPP gas.  I have also examined and evaluated brazed joints in structural and consumer components ranging from airplane jet engine turbine blades to motorcycle handlebars to brazed joints in MAPP gas cylinders.

4.  Included among my clients are plaintiff and defense law firms, major insurance carriers, federal, state government and municipal agencies.  I am an adjunct faculty instructor through the Materials Engineering Institute of ASM International and have taught courses on materials failure analysis as part of Extension Courses through ASM International, UCLA, UC Irvine and at Government depots and bases.  I have also been involved in educational seminars offering Continuing Education Credit for attorneys and insurance adjustors.

5.  I have previously qualified as an expert in materials failure analysis in the States of California, Nevada, Arizona, and Texas in State Courts and In Federal Courts.  I am a resident of the State of California, County of Orange.

6.  I was retained as a consultant and metallurgical/materials failure analysis expert by Attorney Kevin Liebeck  of Hodes Milman Liebeck LLP in October 2012, to the fact that his client, Mitchell Walter, suffered serious burn injuries while using a Goss M-1003 MAPP Gas cylinder (manufactured by Western Industries), Inc. with a Victor TX504 Turbotorch extreme nozzle on August 19, 2011.  (The subject cylinder will be referred to as a Goss/Western Industries MAPP gas cylinder hereafter).

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL

7. As part of my work assignment I performed the following tasks:

(a) Reviewed the depositions of plaintiff Mitchell Walter dated June 27, 2012; and June 16, 2014.

(b) Reviewed the depositions dated May 27 and 28, 2014 of Mr. Ron Raboin (PMK for Western Industries) and reported inventor of the copper-nickel-phosphorus (Cu-Ni-P) braze used to join the neck of the MAPP gas cylinder to the steel body.

(c) Performed a detailed metallurgical examination of the subject Goss/Western Industries MAPP gas cylinder that had a fractured neck. The examination and tests were performed on August 28, 29 and September 19, 2014; and pursuant to agreed upon protocols written by the undersigned and Goss's expert, Mr. Christopher Brignola of Vollmer-Gray Engineering Labs. Present during the examinations and participating in the tests in addition to Dr. Kar, and Mr. Brignola were experts/consultants for Goss and Western Industries. These individuals requested additional tests during the joint examination; all of which were performed.

(d) Reviewed and relied upon the results of the non-destructive and destructive tests that I performed on a failed Worthington/Western Industries/Chilton MAPP M1003 gas cylinder and numerous exemplars –that I had examined in a litigated matter entitled Richard Glenn et al v. Newell Operating Company dba Bernzomatic Corporation et al (Ventura County SCC No 56-2007-00285785-CU-PL-VTA) /State Compensation Insurance Fund v. Newell Operating Company dba Bernzomatic Corporation et al, (Ventura County SCC No 56-2007-00285785-CU-PO-VTA).

(e) Performed non-destructive and destructive metallurgical examinations and tests on over one dozen Worthington/Western Industries/Chilton MAPP gas cylinders - purchased from local stores in Southern California in 2009 and 2010 as part of a litigated matter entitled Bradley Engelbrick and Roxanne Hernandez vs. Worthington Industries, US District Court Case 8:2008cv01296 (hereafter referred to as Engelbrick v. Worthington)

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL

(f) Reviewed a technical report entitled "Analysis of Failed MAPP Gas Cylinder" authored by Richard Hoffmann, P.E. and David Jones, Hoffmann & Feige Report 2029-RPT-1, dated February 20, 2003 – hereafter referred to as Hoffmann Feige MAPP Cylinder report;

(g) Had discussions on the Hoffmann MAPP Cylinder report and other MAPP gas cylinder failures with metallurgists Dr. Karl Puttlitz, Dr. Richard Hoffmann, and fire investigator Larry Thatcher

(h) Reviewed published research in metallurgical journals and treatises on the use of "Stead's Reagent" for determining phosphorus segregation in cast irons and steels.

(i) Reviewed and relied upon several reference Metals Handbooks and treatises published by ASM Metals International, Materials Park, Ohio; and Compressed Gas Association (CGA) publications.

(j) Reviewed and relied upon the discovery materials provided to me as part of the above two litigated matters

(k) Testified in depositions and in trial on the Engelbrick v. Worthington matter.

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL

Based upon the work I have performed to date I offer the following opinions.  Note that I have included representative photographs in my report to support my opinions.

1. Failure of the Goss/Western Industries  MAPP gas cylinder that resulted in personal injury to Mr. Mitchell Walter was caused by extremely serious metallurgical defects in the braze joint in the neck of the cylinder; and in the braze used to attached the relief valve.

2. The metallurgical defects were introduced in the steel cylinder due to brazing with Western Industries' patented copper-nickel-phosphorus brazing alloy (US Patent 4006838) - that is allegedly non-reactive to MAPP gas.  During brazing (and rebrazing operations) the phosphorus from the Cu-Ni-P braze diffused into steel grains immediately adjacent to the braze.  This caused solid metal embrittlement and local weakening of the steel adjacent to the braze.  Use of this type of braze also resulted in porosity, voids and cracks at the interface that further contribute to general weakening of the joint.

3. The joint metallurgical examination and tests on the fractured neck portion of the subject Goss/Western Industries cylinder unequivocally established that there were local areas in the steel shell immediately adjacent to the braze that exhibited local areas of brittle cleavage fracture in the steel can material adjacent to the Cu-Ni-P braze .  The occurrence of brittle cleavage fracture in low carbon steel is an abnormal condition; and supports the hypothesis that in this cylinder local areas of the steel can proximal to the braze have been weakened due to embrittlement.  The normal mode of overload fracture in the steel can material used by Western Industries (in the absence of embrittlement) is ductile dimpled rupture.

4. Examination of the cross-section prepared through the neck region of the fractured Goss cylinder using Stead's reagent confirmed the presence of phosphorus in steel grain boundary regions immediately adjacent to the braze.  In addition other metallurgically unacceptable defects such as porosity and cracks were also observed.  The finding of phosphorus in steel grain boundaries indicates that there

---

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL

was local weakening of the can material immediately adjacent to the braze and explains metal embrittlement.

5   A review of discovery materials provided to me has shown that Western Industries were aware of the deleterious effects of phosphorius; and in fact had made research trials to substitute tin (Sn) for phosphorus (P) that included metallurgical tests and mechanical properties.  However no efforts were made to recall defective cylinders until February 2012.

6   Although the Victor Turbotorch did not fail in the incident that caused injuries to Mr. Walter; I am critical of the component that it did not have a V-notch groove assembly as is present in Worthington (Bernzomatic) torches.  This configuration permits the nozzle to break off if a lit cylinder is accidentally dropped and fall where the nozzle impacts the ground.  It is foreseeable that lit cylinders are accidentally dropped.  In the absence of a v-notch groove, bending loads imposed by the nozzle impacting the ground can crack or break the embrittl

This disclosure report is being prepared by the undersigned expert to a reasonable degree of scientific certainty based on discovery materials provided to me to date and the non-destructive/destructive examinations and tests of the materials available and conducted.  I reserve the right to supplement my report as additional discovery proceeds or further tests are conducted.

Submitted by:
KARS' ADVANCED MATERIALS INC.



Ramesh J. Kar, Ph.D., P.E.
Professional Metallurgical Engineer, MTE 1739
Fellow, ASM International

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL



(a)

(b)

Figure 1:       Photographs of fractured Goss/Western Industries MAPP GAS Cylinder
And Victor Torch

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL



(a)

(b)

Figure 2:   SEM photographs of neck area of MAPP cylinder shows fracture in braze and  steel shell.  Indicated area in (a) shown at higher magnification (b) shows brittle cleavage fracture features

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL



Figure 3:      Ductile dimpled fracture observed in non embrittled steel tank regions away from
               braze (overloaded to failure in laboratory)



| Elt. | Line | Intensity (c/s) | Error 2-sig | Conc |
|------|------|-----------------|-------------|---------|
| Al | Ka | 4.33 | 1.137 | 0.476 |
| P | Ka | 116.43 | 2.461 | 9.734 |
| Fe | Ka | 297.30 | 3.617 | 32.171 |
| Ni | Ka | 150.78 | 2.674 | 24.972 |
| Cu | Ka | 157.80 | 2.690 | 32.647 |
| | | | | 100.000  Total |

kV                 20.0
Takeoff Angle      40.0°
Elapsed Livetime   100.0

**Figure 4:**   Energy dispersive X-ray (EDX) spectrum of braze area in neck shows Cu-N-P braze

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL



(a)



(b)

**Figure 5.** Optical photomicrographs of cross-section taken through fractured neck in braze area with fracture in profile.  In (b) phosphorus diffused into steel aat braze interface is indicated

**KARS' ADVANCED MATERIALS, INC.**
2528 W. Woodland Dr.
Anaheim, CA  92801

ATTORNEY CONSULTANT WORK PRODUCT/CONFIDENTIAL



Figure 5. Optical photomicrograph of cross-section taken through braze away from failure shows porosity defect

Figure 6          Braze region away from fracture showing phosphorus diffusing into steel

# EXHIBIT 8

## Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MITCHELL WALTER,

    Plaintiff,

    vs.    NO. 8:13-CV-01503-JLS-AN

WESTERN INDUSTRIES, INC.;
VICTOR TECHNOLOGIES
INTERNATIONAL, INC.;
TURBOTECH; GOSS, INC.;
and DOES 1 through 100,
inclusive,
    Defendants.
_____

VIDEOTAPED DEPOSITION OF
MITCHELL WALTER

Monday, June 16, 2014
9:25 a.m.

9210 Irvine Center Drive
Irvine, California

Reported by Kyung Lee-Green, CSR No. 12655, CLR

## Page 2

1    APPEARANCES OF COUNSEL
2  For Plaintiff Mitchell Walter:
3      HODES MILMAN LIEBECK MOSIER, LLP
       BY: KEVIN G. LIEBECK, ESQ.
4      9210 Irvine Center Drive
       Irvine, California 92618
5      (949)640-8222
       kliebeck@hmlm.com
6
7  For Defendant Western Industries, Inc.:
8      FOLEY & LARDNER
       BY: BARTHOLOMEW F. REUTER, ESQ.
9      777 Wisconsin Avenue
       Milwaukee, Wisconsin 53202
10     (414)271-2400
       breuter@foley.com
11
12 For Defendant Victor Technologies
   International, Inc., and TurboTorch:
13
       HOLLAND & KNIGHT LLP
14     BY: SHELLEY G. HURWITZ, ESQ.
       400 South Hope Street, 8th Floor
15     Los Angeles, California 90071
       (213)896-2400
16     shelley.hurwitz@hklaw.com
17
   For Defendant Goss, Inc.:
18
       DIEDERICH & ASSOCIATES
19     BY: BRUCE E. TODD, ESQ.
       1980 Orange Tree Lane, Suite 106
20     Redlands, California 92374
       (909)793-9014
21     btodd@travelers.com
22
23 Also Present:
24     Manuel Esquivel, Videographer
25

## Page 3

1    INDEX OF EXAMINATION
2  WITNESS: Mitchell Walter
3
4  EXAMINATION              PAGE
5  By Mr. Reuter            6, 178
6  By Ms. Hurwitz           166, 181
7  By Mr. Todd              176, 181
8
9
10 QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER
11     PAGE  LINE
12     160   15
13     162   1
14     172   23
15
16
17     INFORMATION REQUESTED
18         (None.)
19
20
21
22
23
24
25

## Page 4

1    INDEX TO EXHIBITS
2  EXHIBITS                         MARKED
3  1    Documents, Bates-stamped Pltf1     51
        through Pltf4, 4 page
4
5  2    Physician's Permit, Bates-stamped  55
        Plft556, 1 page
6  3    Western Allied Corporation Detail  57
        Time Card History, Bates-stamped
7       Pltf297 through 298, 2 pages
8  4    City of Los Angeles Fire Department 64
        Ambulance Services Conversion Record,
9       Bates-stamped Pltf14 through Pltf16,
        3 pages
10
11 5    Photograph, 1 page            158
12 6    Product Claims Questionnaire,      179
        Bates-stamped PLtf558, 1 page
13               * * *
14
15
16
17
18
19
20
21
22
23
24
25

| | Page 53 |
|---|---|
| 10:29:04 1 | A   No, it is not. |
| 2 | Q   Okay.  Did you submit these receipts to |
| 3 | someone for reimbursement? |
| 4 | A   I believe probably my mother or my |
| 10:29:19 5 | girlfriend did -- |
| 6 | Q   Okay. |
| 7 | A   -- yes. |
| 8 | Q   And do you know to whom they submitted |
| 9 | them for reimbursement? |
| 10:29:27 10 | A   No, I do not. |
| 11 | Q   Did you have -- did you get workers' |
| 12 | compensation coverage for -- in connection with |
| 13 | your -- with the accident? |
| 14 | MR. LIEBECK: Object to collateral source. |
| 10:29:40 15 | But you can answer it.  Go ahead -- |
| 16 | THE WITNESS:  Yes. |
| 17 | BY MR. REUTER: |
| 18 | Q   And do -- is that -- is that one -- is |
| 19 | that one -- is the source of that workers' comp |
| 10:29:53 20 | coverage, did you -- did you -- were claims |
| 21 | submitted in connection with that workers' comp |
| 22 | claim? |
| 23 | MR. LIEBECK: Hold on just one second. |
| 24 | And, Bart, I'm sorry to interrupt you, but |
| 10:29:58 25 | I just -- can we just agree that I'll have a running |

| | Page 55 |
|---|---|
| 10:30:47 1 | A   I do not know. |
| 2 | Q   So -- so was there any aspect of your |
| 3 | treatment for which you were -- or your medical |
| 4 | expenses in connection with the accident for which |
| 10:31:13 5 | you were not reimbursed? |
| 6 | MR. LIEBECK: Calls for speculation. |
| 7 | You can answer. |
| 8 | THE WITNESS:  I don't believe so. |
| 9 | BY MR. REUTER: |
| 10:31:19 10 | Q   So, to your knowledge, everything was |
| 11 | picked up by workers' compensation or your health |
| 12 | insurance or some combination of the two? |
| 13 | A   That's correct. |
| 14 | Q   Okay. |
| 10:32:09 15 | Could you please mark that as |
| 16 | Exhibit No. 2. |
| 17 | (Exhibit 2 marked.) |
| 18 | BY MR. REUTER: |
| 19 | Q   Mr. Walter, I've put in front of you what |
| 10:32:32 20 | has been marked as Exhibit No. 2; correct? |
| 21 | A   That's correct. |
| 22 | Q   And that document is Bates-numbered |
| 23 | Plaintiff 556; is that right? |
| 24 | A   That's correct. |
| 10:32:42 25 | Q   Okay.  And -- so am I -- this is a |

| | Page 54 |
|---|---|
| 10:30:01 1 | objection as to collateral source for work comp -- |
| 2 | MR. REUTER: Sure. |
| 3 | MR. LIEBECK: -- and then you can ask and |
| 4 | I won't bother -- I won't interrupt you? |
| 10:30:07 5 | MR. REUTER: Certainly. |
| 6 | MR. LIEBECK: Go ahead.  Okay. |
| 7 | THE WITNESS: Yes. |
| 8 | BY MR. REUTER: |
| 9 | Q   Okay. |
| 10:30:19 10 | And what is it that -- did you go out |
| 11 | and -- did you buy these -- these materials |
| 12 | yourself? |
| 13 | A   No. |
| 14 | Q   Okay.  Somebody went out and bought them |
| 10:30:30 15 | for you? |
| 16 | A   That's correct. |
| 17 | Q   And these were creams or ointments that |
| 18 | you needed in connection with the accident? |
| 19 | A   Correct. |
| 10:30:38 20 | Q   Okay. |
| 21 | And what was -- what -- what was the cream |
| 22 | or the -- what were the creams or ointments that you |
| 23 | needed? |
| 24 | A   The names of them? |
| 10:30:47 25 | Q   If you know. |

| | Page 56 |
|---|---|
| 10:32:47 1 | return-to-work slip that you received; is that |
| 2 | right? |
| 3 | A   That's correct. |
| 4 | Q   And so I -- I'm just wanting to confirm |
| 10:32:59 5 | what I think you and I had thought previously, that |
| 6 | your time off of work was from August 19, 2011, to |
| 7 | October 12, 2011; is that correct? |
| 8 | A   That is correct. |
| 9 | Q   Okay. |
| 10:33:14 10 | And you were -- and you were able to |
| 11 | return to work on the 12th; is that right? |
| 12 | A   I believe I started the 13th because of |
| 13 | the doctor visit.  This was the day I was released. |
| 14 | Q   Okay. |
| 10:33:24 15 | A   I'm not sure of the exact time, so . . . |
| 16 | Q   Okay. |
| 17 | And, Mr. Walter, in the -- the accident |
| 18 | happened -- I -- I think you had testified |
| 19 | previously sometime in the afternoon on August 19th; |
| 10:33:44 20 | is that right? |
| 21 | A   That is correct. |
| 22 | Q   Okay. |
| 23 | And, Mr. Walter, did you continue to be |
| 24 | paid by Western Allied while you were off of work |
| 10:34:00 25 | for that -- for that time period? |

| Page 77 | Page 79 |
|---|---|

**Page 77**

11:20:53  1    And your -- your face is also tan too,
2    that's from the sun?
3    A    That's correct.
4    Q    I -- probably from working outside a
11:20:59  5    little bit --
6    A    Yeah.
7    Q    -- yesterday, working to install the air
8    conditioner; right?
9    A    That's correct.
11:21:06 10    Q    Okay.  Do you remember the names of any of
11    the physicians or doctors that -- that --
12    treated you while you were at the hospital?
13    A    No, I do not.
14    Q    Okay.  Outside of being given some pain
11:21:24 15    medication and having ointments applied to the burn
16    sites, do you recall any other treatment that they
17    did for you while you were at the hospital?
18    A    I don't recall.  They were giving me quite
19    a few things, and I didn't ask about any of them.  I
11:21:40 20    just ...
21    Q    Okay.  But, again, I'm -- I just want to
22    be sure.
23    Sitting here today, you don't recall --
24    you don't recall treatments outside of salves or
11:21:55 25    ointments being put on your burn sites and being

**Page 78**

11:21:59  1    given pain medication; is that right?
2    A    That's correct.
3    Q    Okay.  I mean, they -- they took your
4    blood pressure; right?
11:22:04  5    A    Yes.
6    Q    Okay.  And they listened to your heart I'm
7    sure?
8    A    Yes.
9    Q    Okay.  But be -- beyond that, you don't
11:22:11 10    have a recollection of other treatments that you
11    received?
12    A    No.
13    Q    Okay.  And you were -- am I right that you
14    were awake and -- you were awake and aware of your
11:22:23 15    surroundings while you were in the hospital?
16    A    Yes.
17    Q    Okay.  And you -- you -- you may not have
18    understood in a medical sense what they were, you
19    know, doing to you and -- and always, but from a
11:22:36 20    layperson's perspective, you understood what they
21    were doing to you; is that right?
22    A    You mean like a face peeling and scrubbing
23    the skin off and that kind of thing?
24    Q    Yes.
11:22:45 25    A    Yes.

**Page 79**

11:23:02  1    Q    So, Mr. Walter, you had -- I -- I'm going
2    to just ask you the names of a couple of physicians
3    that had been referenced in your -- in some
4    discovery responses that you had signed in this
11:23:12  5    case.  I'm just trying to figure out what if -- if
6    that jogs your recollection as to any -- any --
7    anything that they did with you or to you, okay.
8    So one was the name Christian Paquet.  Do
9    you remember that doctor?
11:23:23 10    A    No, I do not.
11    Q    Okay.  You don't remember what -- any
12    treatment that he gave to you?
13    A    No, I do not.
14    Q    Okay.  The next one is Ben Madrid, do you
11:23:32 15    remember anything that he did?
16    A    No, I do not.
17    Q    Okay.  Benjamin Yuh, Y-u-h?
18    A    No, I do not.
19    Q    Chia Soo, C-h-i-a; last name Soo, S-o-o?
11:23:48 20    A    No, I do not.
21    Q    Jonathan Wagner?
22    A    No, I do not.
23    Q    Newton Edward?
24    A    No, I do not.
11:23:56 25    Q    Abrishmian, A-b-r-i-s-h-m-i-a-n, last name

**Page 80**

11:24:01  1    Luis, L-u-i-s?
2    A    No, I do not.
3    Q    Okay.
4    And you're not -- you are not seeing any
11:24:12  5    medical provider today or within the last, you know,
6    several months in connection with the accident, are
7    you?
8    A    No, I'm not.
9    Q    Okay.  You -- you've been -- in your mind
11:24:27 10    or in the physician's mind, you're fully healed; is
11    that correct?
12    MR. LIEBECK:  I'm going to object as to
13    speculation.
14    BY MR. REUTER:
11:24:32 15    Q    Let me ask -- yeah, let me ask you a --
16    MR. LIEBECK:  And expert opinion.
17    BY MR. REUTER:
18    Q    -- a better question --
19    (Simultaneous speakers interrupted by
11:24:32 20    the reporter.)
21    MR. LIEBECK:  And expert opinion.
22    BY MR. REUTER:
23    Q    In your mind, are you fully healed?
24    A    I feel like I'm healed.
11:25:00 25    Q    Mr. Walter, you remember that we -- we

| Page 89 |
|---|

11:35:10 1 right back to work.
2   Q  That's convenient.
3   A  Yes.
4   Q  And then in connection with -- well,
11:35:30 5 the -- the coworker who didn't put the cap on the
6 acetylene tank tightly, he -- he -- I assume he
7 knows now to put that thing on tightly; is that
8 right?
9   A  Yes.
11:35:42 10   Q  You've talked to him about that?
11   A  Yes.
12   Q  Who was that?
13   A  Well, I had a couple -- two apprentices,
14 so it was one of two guys.
11:35:51 15   Q  Okay. And who were they?
16   A  Chris Cayton and Robert Arzate.
17   Q  And in connection with your stitches and
18 the acetylene tank, you didn't bring claims against
19 anyone, did you?
11:36:12 20   A  No, I did not.
21   Q  Okay.
22     Mr. Walter, your -- as I understand from
23 the documents that we've looked at, you're fully
24 able to perform your -- your duties at
11:36:34 25 Western Allied; is that correct?

| Page 90 |
|---|

11:36:35 1   A  That's correct.
2   Q  Okay.
3     And sitting here today, you don't feel any
4 pain in connection with the accident; right?
11:36:46 5   A  No, I do not.
6   Q  And after you were discharged from the
7 hospital, was your pain at a zero or one out of ten?
8   A  I would say it would be a zero --
9 discharged from the hospital -- or dis -- the full
11:37:06 10 discharge?
11   Q  Yes. When you got sent home.
12   A  When I got sent home, I -- you're --
13 you're not talking about where this article comes
14 in -- are you talking about this date right here
11:37:20 15 (indicating)?
16   Q  Sure. No, I -- yeah, I just want to be
17 clear.
18     You were discharged from the hospital on
19 August 21, 2011; right?
11:37:29 20   A  Okay. Yes.
21   Q  So you were sent home from the -- you're
22 discharged from the hospital on that date?
23   A  Correct.
24   Q  Okay. So you're -- you're home now on
11:37:38 25 August 22, 2011; right?

| Page 91 |
|---|

11:37:40 1   A  Uh-huh.
2   Q  And your pain is a zero or one out of ten;
3 is that fair?
4   A  That's fair.
11:37:47 5   Q  And it -- and it -- and zero or one out of
6 ten, it never got any worse than that through to the
7 date that you're released to go back to work; is
8 that right?
9   A  That's correct.
11:37:59 10   Q  Okay.
11     And you're not taking any med -- and
12 since -- since -- well, during the -- during the
13 time that you were off of work and at home, from
14 August 21, 2011, to October 12, 2011, the only kinds
11:38:29 15 of medications that you're taking in connection with
16 this are salves and -- and ointments --
17   A  That's correct.
18   Q  -- is that correct.
19     Okay. No oral medication?
11:38:41 20   A  Maybe a few Tylenol or something of that
21 nature, but --
22   Q  If it was, it was over the counter?
23   A  That's correct.
24   Q  On -- on August 19, 2011, what was the --
11:39:21 25 what was the overall project or job, you know, that

| Page 92 |
|---|

11:39:25 1 needed to be done at the work site that you were
2 working on?
3   A  I was working on some reheat coils and --
4     (Reporter clarification.)
11:39:36 5   THE WITNESS: Reheat coils. And I believe
6 there were some valves that had been placed in a
7 wrong position and needed to be flipped around, some
8 rework.
9   BY MR. REUTER:
11:39:50 10   Q  And reheat coils, those are coils that are
11 going to be in an air conditioning duct and will
12 heat and will -- will make the air conditioning air
13 a little bit hotter --
14   A  That's correct.
11:40:05 15   Q  -- is that right?
16     And the -- the valves that needed to be
17 reversed or --
18   A  Right.
19   Q  -- moved in some way, those were for what?
11:40:17 20   A  I believe they were for -- I believe they
21 were for the flow. It's like circuit setter type
22 valves that were -- adjust the flow by the size of
23 the unit.
24   Q  And for -- for what system?
11:40:31 25   A  The heating system.

# EXHIBIT 9

1   KEVIN G. LIEBECK SBN 224317
    T. GABE HOUSTON SBN 256213
2   JASON M. CARUSO SBN 287809
    **HODES MILMAN LIEBECK, LLP**
3   9210 IRVINE CENTER DRIVE
    IRVINE, CALIFORNIA 92618
4   TEL: (949) 640-8222
    FAX: (949) 336-8114
5   KLIEBECK@HMLM.COM
    GHOUSTON@HMLM.COM
6   JCARUSO@HMLM.COM

7   ATTORNEYS FOR PLAINTIFF, MITCHELL WALTER

8                    **UNITED STATES DISTRICT COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**

10
11  MITCHELL WALTER,                   ) CASE NO.: 8:13-cv-01503-JLS-AN
                                       )
12                                     ) *ASSIGNED FOR ALL PURPOSES TO:*
              PLAINTIFF,               ) DIST. JUDGE:    HON. JOSEPHINE L.
13                                     )                 STATON
         VS.                           ) DEPT.:          10-A
14                                     ) MAGISTRATE:     HON. ARTHUR
                                       )                 NAKAZATO
15  WESTERN INDUSTRIES, INC.;          ) DEPT.:          6-B
    VICTOR TECHNOLOGIES                )
16  INTERNATIONAL, INC.;               ) **PLAINTIFF'S SUPPLEMENTAL**
    TURBOTORCH; GOSS, INC.; AND        ) **INITIAL DISCLOSURES OF**
17                                     ) **INFORMATION PURSUANT TO**
    DOES 1 THROUGH 100, INCLUSIVE,     ) ***FEDERAL RULES OF CIVIL***
18                                     ) ***PROCEDURE* RULE 26(a)(1)**
                                       )
19            DEFENDANTS.              ) RULE 26 SCHEDULING CONFERENCE:
                                       ) DATE: JANUARY 17, 2014
20                                     ) TIME: 1:30 P.M.
                                       )
21                                     ) COMPLAINT       AUGUST 16, 2013
                                       ) FILED:
22  _____  ) TRIAL DATE:     NOT SET
                                       )
23

24  TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:

25       COMES NOW Plaintiff, MITCHELL WALTER and submits this

26  supplemental initial disclosure pursuant to *Federal Rules of Civil Procedure*,

27  Rule 26(a)(1).

28

_____
**PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES OF INFORMATION PURSUANT TO**
**FEDERAL RULES OF CIVIL PROCEDURE RULE 26(a)(1)**

## I.   PLAINTIFF'S COMPUTATION OF DAMAGES.

Plaintiff has suffered general damages in an amount to accord to proof at time of trial.  Plaintiff will further request the imposition of an exemplary damages award in accord with the Defendants' conduct.

Plaintiff suffered as a result of the subject incident approximately $7,000 in wage loss, as a result of his being unable to return to work from August 19, 2011 to October 12, 2011.  Plaintiff's physician certified Plaintiff was unable to return to work during the entirety of that period.

Plaintiff has been by the conduct of the Defendants to expend approximately $27,000 for surgical services, burn intensive care treatment, and post-surgical therapy services following the subject incident.

The foregoing is based on Plaintiff's knowledge and the documentary evidence presently in Plaintiff's possession.


DATED: JANUARY 16, 2014          HODES MILMAN LIEBECK, LLP


BY:   /s/ Jason M. Caruso
          KEVIN G. LIEBECK, ESQ.
          T. GABRIEL HOUSTON, ESQ.
          JASON M. CARUSO, ESQ.
          ATTORNEYS FOR PLAINTIFF,
          MITCHELL WALTER

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2015, I electronically filed the foregoing with the Clerk of Court using the EM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

        /s/ Shelley G. Hurwitz

        Shelley G. Hurwitz